UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Cheryl Thomas,  Case No. 1:05cv794

    Plaintiff,

                                      Judge Michael R. Barrett

    v.

Avon Products, Inc.,

    Defendant.

**ORDER**

This matter is before the Court pursuant to Defendant's motion for summary judgment (Doc. 14). Plaintiff filed a memorandum in opposition (Doc. 19) to which Defendant replied (Doc. 21). This matter is now ripe for review.

I.     PROCEDURAL BACKGROUND AND FACTS

Plaintiff filed a complaint alleging disability discrimination in violation of the Americans with Disabilities Act ("ADA") (Count I) and O.R.C. § 4112 (Count II); violations of the Family and Medical Leave Act ("FMLA") (Count III) and retaliation (Count IV). Plaintiff alleges that she suffers from debilitating migraines caused by exposure to perfume emissions and that Defendant has failed to accommodate her.

Plaintiff has been as employee of Avon Products, Inc. ("Avon") since January 19, 1998 when she began as a Customer Service Representative at Avon's Call Center in Springdale, Ohio. (Thomas Depo., p52). Avon is a cosmetic company. (Id. at p65). Approximately two and half years later in June of 2000, Plaintiff applied for and was hired for a position as a Returns Processor. (Id. at 60). On or about December, 2001, Plaintiff

applied for a position in Avon's manufacturing department.[1] During the interview process Plaintiff discussed her propensity for migraines with Avon. To accommodate Plaintiff's propensity for migraines, Avon sent Plaintiff to Dr. James Keller to determine whether wearing a respirator would help Plaintiff. (Id. p130-131). Both Dr. Keller and Plaintiff's personal physician, Dr. Armentrout, agreed that Plaintiff would have to wear a respirator at all times in the manufacturing department. (Affidavit of Teena Renville ("Renville Aff.") ¶7, Ex. 4, 5). However, Plaintiff felt, due to the location of the break rooms, that a respirator would not be a workable accommodation. The break rooms are located in the same area as the manufacturing department; therefore, during breaks Plaintiff would have to remove the respirator and be exposed to the perfumes odors. (Thomas Depo. p128).[2] Therefore, since the position being offered was in the glass pump area, where perfume is made, Plaintiff decided to pass on the transfer. (Thomas Depo. p65, 131). In hopes of alleviating her migraines caused by perfume smells, Plaintiff underwent sinus surgery in June of 2002. (Id. p107,128-129).

     In the Fall of 2002, Avon's lipstick operation was moved to its Springdale location. Plaintiff applied for and was hired to work in the lipstick department. Plaintiff states she was able to work in lipstick because she could not detect perfumes in the lipstick. (Id. p67-68). However, at certain times based upon supply and demand employees are required to work in other areas of manufacturing. Avon calls this "cross-training". Apparently during Plaintiff's cross-training in glass pump she experienced severe migraines that eventually

---

[1] The Manufacturing Department is comprised of one large open room with approximately 60 production lines divided in five different areas: Lipstick, Hot fill, Liquid Roll-On, Kin-So-Soft and Glass Pump. Thomas Depo. p69-70.

[2] The Court is not clear why the break room would be an issue while she worked on the glass pump line but not on Lipstick or any on of the other lines.

incapacitated her. (Doc. 1, ¶8-9). On November 22, 2004 Dr. Armentrout opined that she "may not medically work in perfumed ambiance, ever." (Thomas Depo, Exh 6). Avon then refused to allow Plaintiff to return to work and requested that Dr. Ross Myerson review Plaintiff's record and the opinion of Dr. Armentrout. Dr. Myerson stated that he "could not recommend a return to work." (Id. Exh 8). Furthermore, Dr. Myerson issued an opinion, dated June 6, 2005, which stated that since Plaintiff is unable to tolerate exposure to fragrances and given the nature of Avon's business an accommodation is "virtually impossible and beyond the standard of 'reasonable' that is required by the ADA." (Id. Exh. 9). Plaintiff filed a Charge of Discrimination with the EEOC on February 15, 2005 and received her right to sue letter on September 9, 2005. (Doc. 1, Exh. 1 and 2).

Below is a brief summary of Plaintiff's absences from work due to migraines. A doctor's note indicates that she was absent due to migraines August 7-10, 2000; October, 23, 2000 and December 28, 2000 while working in Returns. (Renville Aff. Exh 3). Additionally, an unsigned document indicates that she was also absent due to migraines January 14-17, 2000 while she was working at the Call Center. (Id.) Avon's Absences Summary Repot specifically indicates that Plaintiff was also absent due to a migraine on the following dates: March 19-21, 2001; May 2, 2001; November 12, 2001; February 14, 2002; February 19, 2002; February 26, 2002; March 11-12, 2002; April 1, 2002; April 15-16, 2002; May 30, 2002; June 4-6, 2002; June 25-27, 2002; July 8-9, 2002; July 11, 2002; August 5-6, 2002; September 9, 2002, September 24, 2002; November 4, 2002; November 6, 2002; December 9, 2002. Plaintiff was on short term disability from June 26, 2003 - July 14, 2003 and again from November 10, 2004 - February 1, 2005 at which time she went

on long term disability. (Id., Exh. 7; Thomas Depo, p46-49).³ It appears that Plaintiff was given FMLA leave for most of the above referenced absences. (Id. Exh 6-12).

    II.    ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact, but then the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita*, 475 U.S. at 587. However, the nonmoving party may not rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

    A.    FLMA Claim

To establish a claim for FMLA interference, Plaintiff must show that: (1) she is an eligible employee; (2) the defendant is an employer within the meaning of the FMLA; (3) the employee is entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee benefits to which she was entitled under the FMLA. *Cavin v. Honda of America Mfg., Inc.* 346 F.3d 713, 719 (6th Cir. 2003). Neither party disputes that Plaintiff is an eligible employee and that Avon is an employer within the meaning of the FMLA. Avon does argue that Plaintiff's

---

³There are other dates where Plaintiff is marked as sick but the report does not specify what was the cause of the illness.

FLMA claim should be dismissed because Plaintiff testified at her deposition that she is not making a claim under FMLA. (Thomas Depo., p138). More importantly, Plaintiff stated she could not ultimately recall any instance where Avon denied her FMLA time when she requested it. Id. Furthermore, Plaintiff, in her memorandum in opposition to summary judgment, does not address her FMLA allegations. Thus, based upon Plaintiff's statement that she is not making an FMLA claim, that she can not recall any time when Avon denied her FMLA leave and the documents which support that she was provided FMLA leave (See Renville Aff. Exh 6-12), Defendant's motion for summary judgment as to the FMLA claim (Count Three) is hereby GRANTED.

B. Discrimination - ADA/O.R.C. 4112[4]

The ADA, 42 U.S.C. § 12101 et seq., prohibits certain employers from discriminating against individuals on the basis of their disabilities. See § 12112(a). *Sutton v. United Air Lines*, 527 U.S. 471, 475 (1999). The *McDonnell Douglas* burden-shifting analysis is applicable to employment claims brought under the ADA. *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1184-85 (6th Cir. 1996). In order to establish a *prima facie* case of disability discrimination, a plaintiff must show (1) she has a disability; (2) that she is "otherwise qualified" for the job; and (3) that defendant either refused to make a reasonable accommodation for her disability or made an adverse employment decision regarding her solely because of her disability. *Smith v. Ameritech*, 129 F.3d 857, 866 (6th Cir. 1997), *citing*, *Roush v. Weastec, Inc.*, 96 F.3d 840, 843 (6th Cir. 1996). The defendant must then

---

[4]Given the similarity of the language used in the ADA and Chapter 4112, the Ohio Supreme Court has held that federal regulations and case law are applicable to disability discrimination claims brought under Chapter 4112. *Columbus Civil Serv. Comm. v. McGlone*, 697 N.E.2d 204, 206-207 (1998). Thus, both claims will be analyzed together.

offer a legitimate explanation for its action. *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). If the defendant satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual. *Id.*

There is a dispute between the parties as to whether or not Plaintiff is disabled. Under the ADA, "disability" means (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 USC §12102(2). "Major life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 CRF §1630.2(I) The ADA Regulations provide that "substantially limits" means "(i) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration which the average person in the general population can perform that same major life activity." 29 CFR §1630.2(i)(1).

Avon argues that Plaintiff's complaint does not set forth which major life activity that she asserts is substantially limited. However, based upon her deposition testimony, Avon surmises, and the Court agrees, that Plaintiff's allegation is that she is substantially limited in the major life activity of work. This is based on Plaintiff's deposition testimony that she is able to get dressed, bathe herself, drive a car, and provide meals for herself. (Thomas Depo. p134-135). Plaintiff stated that she is limited socially in that she can not go to places where people are smoking such as bars, clubs, parties, etc. and that she is unable to go to hair salons because of the smells. (Id. at 19-21). However, those limitations do not equate to a major life activity. Plaintiff argues, by way of her affidavit, that when she has

a migraine she cannot perform manual work, has blurry vision, her physical coordination and thought processes are compromised and she cannot tolerate bright lights or noises. (Affidavit of Cheryl Thomas ("Thomas Aff."), ¶10).  Moreover, Plaintiff specifically states, "when the migraines occur, I am certainly disabled from working." (Thomas Aff. ¶7).[5]

The ADA Regulations provide that "substantially limits" as to the major life activity of "working" means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."  29 CRF §1630.2(j)(3)(i).  The following factors may be considered in determining whether an individual is substantially limited in the major life activity of "working": (i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment; (vi) The geographical area to which the individual has reasonable access; (v) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or (vi) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from

---

[5]It is well-settled that a party who has been examined at length at deposition cannot create a genuine issue of material fact by later submitting an affidavit that contradicts previously sworn testimony.  *Penny v. United Parcel Serv.*, 128 F.3d 408, 416 (6th Cir.1997); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir.1986).

which the individual is also disqualified because of the impairment (broad range of jobs in various classes). 29 CRF §1630.2(j)(2) and (3).

The first question the Court will address is whether or not Plaintiff is disabled under the ADA. Does she suffer from a physical impairment that substantially limits her major life activity of "work"? The Court finds that she does not as she is not significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. As noted above, the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. 29 CRF §1630.2(j)(3)(i). Although Plaintiff's personal physician opines that she cannot work in a "perfumed ambiance, ever", Plaintiff has not presented any evidence that she is restricted from working in other jobs, manufacturing type or otherwise. In fact, both prior to her employment at Avon as well as after she was placed on disability at Avon, Plaintiff secured employment without major incident. She recalled two instances during her four year employment at TCI Cablevision where she had to take off work because of a migraine, once when painting was being done and the other time when the office was being sprayed for insects. (Thomas Depo. p23). Additionally, Plaintiff could not recall taking time off work due to a migraine during the three year period that she worked for the Ohio Bureau of Employment Services. (Id. at 16). Also, Plaintiff did not have any problems while she worked at Rite Track. (Id. at 37, 42).

There are other factors to be considered as well. The nature and severity of Plaintiff's impairment is limited. Plaintiff admits that she is only impaired when she has a migraine. (Thomas Aff. ¶10). She also admits that her migraines are often caused by her sensitivity to chemical fumes. (Id. at ¶6, 7). Furthermore, as evidenced above, Plaintiff can limit the migraines that she has by staying away from chemical fumes. Although Plaintiff's

propensity for migraines appears to be something that will stay with her her entire life, Plaintiff has not presented evidence that her migraines are frequent when she is not in the presence of chemical fumes. Her doctor has noted that the migraine frequency is two to three times per year and each episode lasts for one to fourteen days. (Renville Aff. Exh. 8).

Plaintiff asserts in her affidavit that she has been severely limited in her work options due to her migraines. She could not be a hairdresser, or a painter, nor could she work at Kinko's or a vinyl manufacturer because of the fumes. Plaintiff also could not operate a propane-powered forklift due to the fuel smells. Even considering the foregoing, Plaintiff has failed to set forth evidence that she can not perform either a class of jobs or a broad range of jobs in various classes. Although Plaintiff may be limited at times, she is not *substantially* limited in a major life activity.

The same is true as to 42 USC §12102(2)(B). There is a record of Plaintiff's history of migraines but, as set forth above, such impairment is not substantially limiting in a major life activity. Furthermore, Plaintiff does not argue that there is a record of her physical impairment that exists.

The Court must next determine if Avon regarded Plaintiff as disabled. If so, then she would meet the definition of disabled as set forth in the ADA. 42 USC §12102(2)(C) provides that having a disability includes "being regarded as having" a physical or mental impairment that substantially limits one or more of the major life activities of such individual. There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life

activities. *Sutton v. United Air Lines,* 527 U.S. 471, 489 (U.S. 1999). In other words, Avon must believe either that Plaintiff has a substantially limiting impairment that she does not have or that she has a substantially limiting impairment when, in fact, the impairment is not so limiting. *Id.* "These misperceptions often 'result from stereotypic assumptions not truly indicative of . . . individual ability.' *Id. citing* 42 U.S.C. § 12101(7).

On its face it appears that Avon regarded Plaintiff as having a physical impairment that substantially limited one of her major life activities since Avon refused to allow her to return to work and since Plaintiff has been receiving long term disability benefits. However, after a closer analysis, the opposite is true. The evidence that Plaintiff is regarded as unable to be in a perfumed ambiance is not sufficient to create a genuine issue of material fact as to whether Plaintiff is regarded as unable to perform a class of jobs or a broad range of jobs in various classes utilizing her skills and experience.

As the regulations interpreting the ADA explain, the purpose of the "regarded as" prong is to provide a cause of action to individuals "rejected from a job because of the 'myths, fears and stereotypes' associated with disabilities." *Ross v. Campbell Soup Co.*, 237 F.3d 701, 708 (6th Cir. 2001) *citing Sutton*, 527 U.S. at 489. The regulations continue,

> Therefore, if an individual can show that an employer . . . made an employment decision because of a perception of disability based on "myth, fear, or stereotype," the individual will satisfy the "regarded as" part of the definition of disability. If the employer cannot articulate a nondiscriminatory reason for the employment action, an inference that the employer is acting on the basis of "myth, fear, or stereotype" can be drawn.

*Ross v. Campbell Soup Co.*, 237 F.3d 701, 708 (6th Cir. 2001) citing 29 CFR pt. 1630, App. § 1630.2(1). Here, Plaintiff has not presented any evidence that Avon's decision not to allow her to return to work was based on a myth, fear or stereotype.

Additionally, in *Murphy v. UPS*, 527 U.S. 516, 524-525 (U.S. 1999), the petitioner, a mechanic, argued that he was regarded as disabled because he was unable, due to his

high blood pressure, to meet the Department of Transportation requirements to drive a commercial vehicle.  However, the Supreme Court stated that he was regarded as unable to perform the job of mechanic *only* when that job required driving a commercial motor vehicle.  The Supreme Court stated that Murphy had put forward no evidence that he was regarded as unable to perform any mechanic job that does not call for driving a commercial motor vehicle.  The Supreme Court held that "in light of petitioner's skills and the array of jobs available to petitioner utilizing those skills, petitioner has failed to show that he is regarded as unable to perform a class of jobs" which "is insufficient, as a matter of law, to prove that petitioner is regarded as substantially limited in the major life activity of working." *Murphy v. UPS*, 527 U.S. at 525.  Here, like in *Murphy, supra*, Plaintiff has failed to show that she is regarded as unable to perform a class of jobs or a broad range of jobs in various classes.  The evidence is clear that Plaintiff worked at various jobs both before and after she worked at Avon without suffering from frequent migraines.  Thus, she is unable to prove that she is regarded as substantially limited in the major life activity of working.

  Based on the foregoing, Plaintiff does not meet the definition of disabled under the ADA and cannot meet the first prong of the *McDonnell Douglas* test to establish disability discrimination.

  However, even if Plaintiff could establish a *prima facie* case of disability discrimination, Avon has offered a legitimate explanation for its action.  *See Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996).  Plaintiff's personal physician indicated that she was not medically allowed to work in a "perfumed ambiance, ever".  Avon's entire manufacturing department is in one large room and, thus, is a "perfumed ambiance".  Based upon Plaintiff's doctor's orders no accommodation could be made. (Renville Aff. ¶15).  See *Pesterfield v. TVA*, 941 F.2d 437, 443-444 (6th Cir.

1991)("TVA's medical staff reasonably relied upon the medical report of plaintiff's private psychiatrist and reasonably interpreted its contents...that plaintiff could not be returned to work safely under any accommodation that TVA could make.")  Thus, Plaintiff could not be allowed to return to work in the manufacturing department.

Since Avon satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual.  *Id.*  The plaintiff may prove pretext by showing either that: (1) the proffered reason had no basis in fact, (2) the proffered reason did not actually motivate the adverse action, or (3) the proffered reason was insufficient to motivate the adverse action.  *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).  The ultimate burden of persuading the trier of fact that the employer intentionally discriminated against her remains at all times with the plaintiff.  *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  Plaintiff has failed to meet this burden.  Plaintiff does not address the pretext issue in her brief and the evidence before the Court does not establish a pretext.  The Doctor's note is clear and supported by a second opinion sought by Avon, thus the legitimate reason has a basis in fact, did motivate Avon, and is sufficient to motivate the decision to not allow Plaintiff to return to work.

Thus, summary judgment is appropriate as to Plaintiff's claim of disability discrimination under both the ADA (Count One) and O.R.C. §4112 (Count Two).

    C.    Retaliation

The ADA provides that "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]." 42 U.S.C. § 12203(a). Retaliation claims are treated the same whether brought under the ADA or Title VII. *Penny v. UPS*, 128 F.3d 408, 417 (6th Cir. 1997) *citing Stewart v. Happy Herman's Cheshire Bridge, Inc.,*

117 F.3d 1278, 1287 (11th Cir. 1997). To establish a prima facie case of retaliation, a plaintiff must show: (1) that she engaged in protected activity; (2) that she suffered adverse employment action; and (3) that a causal connection existed between the protected activity and the adverse action. If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to establish a legitimate, nondiscriminatory reason for the adverse employment action. The plaintiff, of course, bears the ultimate burden of proving that the proffered reason for the action was merely a pretext. *Penny v. UPS*, 128 F.3d at 417 *citing Canitia v. Yellow Freight System, Inc.,* 903 F.2d 1064, 1066 (6th Cir.), cert. denied, 498 U.S. 984 (1990). *See also Butts v. McCullough*, 2007 U.S. App. LEXIS 10667, 15-16 (6th Cir. 2007); *Clark v. City of Dublin*, 178 Fed. Appx. 522, 525 (6th Cir. 2006) *citing Kuriatnyk v. Township of Bazetta, Ohio*, 93 Fed. Appx. 683, 686 (6th Cir. 2004); *Joostberns v. United Parcel Servs., Inc.*, 166 Fed. Appx. 783, 790 (6th Cir. 2006)(apply the same standard under the FMLA); *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (applying the same standard under Title VII).

Plaintiff alleges that Avon discriminated against her "for engaging in protected activity, and/or exercising her rights under the ADA and/or under the FMLA and/or for attempting to engage in protected activity and/or to exercise her protected civil rights under ORC Chapter 4112." (Doc. 1, ¶31).

Although there is a dispute between the parties as to whether or not Plaintiff can establish a prima facie claim of retaliation, the Court need not address that issue. Even assuming Plaintiff can establish a prima facie claim of retaliation, as set forth above, Avon has offered a legitimate, nondiscriminatory reason for its refusal to allow Plaintiff to return to work for which Plaintiff has failed to prove is pretext. Plaintiff's own doctor stated that Plaintiff was not medically able to work "in perfumed ambience, ever."

Thus, based on the foregoing, Defendant's motion for summary judgment as to Plaintiff's claim of retaliation (Count Four) is hereby GRANTED.

III.   CONCLUSION

In summary, Defendant's motion for summary judgment is GRANTED as to all counts in the Complaint.  The Clerk of Courts is directed to close this matter and remove it from the docket of this Court.

**IT IS SO ORDERED.**

                                                  s/Michael R. Barrett
                                                  Judge Michael R. Barrett